Lewis HOWARD, et al.,
Plaintiffs-Appellants,

v.

The CITY OF GREENWOOD, MISSIS-
SIPPI, et al., Defendants-Appellees.

No. 84–4806.

United States Court of Appeals,
Fifth Circuit.

March 7, 1986.

Solomon C. Osborne, Greenwood, Miss., Leonard McClellan, Tupelo, Miss., Alvin G. Matthews, Greenwood, Miss., for plaintiffs-appellants.

Billy B. Bowman, Greenwood, Miss., Robert H. Pederson, Jackson, Miss., Brewer, Deaton, Evans & Bowman, Greenwood, Miss., John L. Low, IV, Jackson, Miss., for Bass, et al.

Before BROWN, JOHNSON, and JOLLY, Circuit Judges.

## OPINION

JOHN R. BROWN, Circuit Judge:

In this appeal, two separate judgments are submitted for appellate review. The first is a summary judgment entered against the claim of Della Rucker that she was denied equal police protection on the basis of race. The second is a final judgment entered against the claims of eight other black plaintiffs who alleged that they had been victims of brutality at the hands of officers of the Greenwood, Mississippi police department. On review of the record, we conclude that the judgments of which the plaintiffs complain were properly entered. Thus, the judgment of the Court below is affirmed.

### Factual Background

Greenwood, Mississippi is a town of some 20,000 residents, roughly half of whom are black. At all times relevant to this litigation, the Greenwood Police Department (GPD) employed 46 officers: twenty-seven of the officers were white, the remaining

nineteen were black. During the three year period from 1977–1980, GPD made a total of 7,261 arrests: 5,100 of those arrested were black.

On September 8, 1980 nine black plaintiffs [1] filed suit under 42 U.S.C. § 1983 against the City of Greenwood and certain of its public officers in their official capacities. The complaint charged police brutality and misconduct toward black citizens by the members of the Greenwood police force. An amended complaint added a claim by plaintiff Della Rucker that members of the black community in Greenwood were denied equal police protection on the basis of race. The plaintiffs sought to have their suit certified as a class action under F.R.Civ.P. 23(b), but their motion was denied after a hearing by the District Court.

### The Magistrate's Decision

Thereafter, the brutality claims were referred to a magistrate for an evidentiary hearing, and for the formulation of proposed findings of fact and conclusions of law. After an eight day hearing, the magistrate filed a report which found all of the plaintiffs' claims to be without merit. He heard evidence regarding eight separate incidents of alleged brutality, and in each case he discredited the plaintiffs' version of the evidence. In many cases, he concluded that the allegations of excessive force in the course of arrests were unfounded. In those cases where force was used to make an arrest, he concluded that its use was reasonable under the circumstances. He therefore determined that the plaintiffs had failed to prove any of their § 1983 claims and recommended that judgment be entered for the defendants. The District Court adopted the magistrate's findings and conclusions and entered judgment in favor of the defendants.

### The Unequal Protection Claim

Rucker's claim was distinct from the brutality claims. She claimed that GPD exer-

1. The plaintiffs below were: Lewis Howard, Dorothy Gatson, Willie Oliver, George Wilson, Troy Sanders, James Powell, Patricia Coleman, Pearlean Taylor and Della Rucker.

cised greater diligence in investigating assaults on white women than it did in investigating those perpetrated against black women. The defendants moved for summary judgment against her claim, and Rucker responded by filing an affidavit in opposition. The pertinent part of her affidavit, Paragraph One, read

> On or about June 12, 1979 an assailant broke into my home and attacked [me], attempted to rape [me], and threatened to kill my four year old daughter. I called the Greenwood Police Department but they failed to investigate. Their failure to investigate was racially motivated because when a similar incident happened to a white woman about two weeks later, fingerprints were taken, bloodhounds were brought in from [the state penitentiary at] Parchman and the assailant was apprehended within a couple of days. None of these things were done when I and other Black women were attacked in our homes.

The Court refused to consider a large portion of Paragraph One of Rucker's affidavit because it contained information that was not within her personal knowledge and which would not be admissible in evidence. *See* F.R.Civ.P. 56(e) (affidavits shall be made on personal knowledge, and shall set forth such facts as would be admissible in evidence). As considered by the Court below, then, the critical portion of Rucker's affidavit read

> On or about June 12, 1979 an assailant broke into my home and attacked [me], attempted to rape [me], and threatened to kill my four year old daughter. I called the Greenwood Police Department.

The defendants' motion for summary judgment was, therefore, granted on the grounds that Rucker had adduced no material issues of fact regarding her allegation that blacks received unequal police protection on the basis of their race.

### The Appeal

■■■ On appeal, the plaintiffs raise four issues concerning the propriety of the judgments entered below, only two of which present any problem.[2] They are: (i) whether the findings of fact by the Court below on the brutality claims were clearly

---

**2.** The remaining issues concern the propriety of: (i) the order denying class certification; and, (ii) the exclusion of proffered evidence of alleged incidents of brutality which occurred prior to 1970 and after 1980.

The trial judge could properly deny class certification on the ground that the plaintiffs' action was inappropriate for class-based litigation under either F.R.Civ.P. 23(b)(2) or (b)(3). An action under subdivision (b)(2) was inappropriate because the plaintiffs had no standing to seek injunctive relief. Even assuming that the plaintiffs had been brutalized in the past, "past exposure to illegal conduct [would] not in itself show a present case or controversy for injunctive relief ... if unaccompanied by any present adverse effects." *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 684 (1983). Standing is a prerequisite to subject matter jurisdiction, so (b)(2) litigation was simply not available as an option for the prosecution of these claims.

The plaintiffs' claims were more appropriately considered to be ones which sought monetary relief. Subdivision (b)(3) is the subdivision generally applicable to classwide litigation which seeks monetary relief, but the trial judge could properly determine that (b)(3) certification would also have been inappropriate in this case. Subdivision (b)(3) litigation is appropriate when class-wide litigation is a superior method of adjudication because common questions of law or fact predominate. In the context of a claim of police brutality, where the precipitating factors may vary from plaintiff to plaintiff, the "commonality" requirement is often difficult to satisfy. As it turned out, the plaintiffs failed to sustain their burden of proving it in this case. The denial of certification was not improper.

With respect to the evidentiary rulings, we emphasize that relevancy determinations rest within the broad discretion of the trial court, and should not be disturbed absent a showing that that discretion has been abused. *Consolidated Grain & Barge Co. v. Marcona Conveyor Corporation,* 716 F.2d 1077, 1083 (5th Cir.1983). Considerations of staleness and changed circumstances warranted the trial judge's conclusion that the evidence of incidents prior to 1970 was of no, or was of limited, utility. The Court could properly exclude the evidence. The evidence pertaining to incidents which occurred after 1980 was also properly subject to exclusion because none of the plaintiffs was involved in an encounter with GPD after February of 1980. The evidence had no other relevance because, as we stated earlier, injunctive relief was unavailable under *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

erroneous; and (ii) whether summary judgment was properly entered on Rucker's claim that she was denied equal police protection on the basis of race. On the first issue, our disposition is governed by the recent decision of the Supreme Court in *Anderson v. City of Bessemer City*, 470 U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) and so we are constrained to affirm the District Court. On the second issue, our review of the record convinces us that there were indeed no material issues of fact with regard to Rucker's claim and, therefore, summary judgment was properly entered.

### The Brutality Claim

■ As we explained, the claims concerning police brutality were referred to a magistrate for an evidentiary hearing. The hearing was in session for eight days, over forty witnesses testified, and the transcript of the proceedings covered some 2,000 pages. At the conclusion of the hearing, the magistrate entered proposed findings of fact and conclusions of law which were later adopted by the District Court. In those findings, the magistrate reviewed the evidence and concluded that the plaintiffs had failed to meet their burden of proof with regard to any of the eight instances of brutality they alleged had occurred.

We have reviewed the record and the findings by the Court below. While we find it somewhat difficult to believe[3] that not a single blow landed, that not a single policeman was overzealous, indeed, that not a single arrest was mishandled by GPD, our review of the findings below is constrained by the clearly erroneous standard. The Supreme Court has recently reiterated, in its decision in *Anderson v. Bessemer City*, 470 U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the very limited scope of appellate review to be exercised under this standard.

If the district court's account of the evidence is *plausible* in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.*

Id., at ——, 105 S.Ct. at 1512, 84 L.Ed.2d at 528. (Emphasis added).

It is certainly plausible that the Court below could find that none of the witnesses on behalf of the plaintiffs was worthy of belief. The magistrate heard all of their testimony and apparently did not credit any of it.

[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.*, at ——, 105 S.Ct. at 1513, 84 L.Ed.2d at 529–30. The testimony of the officers involved in each incident offered a facially plausible account of what actually occurred. That account was not contradicted, and in some cases was corroborated, by the extrinsic evidence. The Court below determined that, in each case, the testimony of the officers was more credible than that offered by the plaintiffs' witnesses. Its findings in that regard are not internally inconsistent and so, constrained as we are by *Anderson*, we cannot say that they exhibit clear error. Thus, the judgment below must be affirmed.

### Unequal Police Protection

■ The second contention on appeal is that the Court below improperly entered summary judgment against Rucker's claim

---

**3.** The skepticism engendered by the findings below is illustrated by the following colloquy which occurred at oral argument in this case:
THE COURT: Would you stand here and tell us Mr. Pedersen that in the years 1970 to 1980

that the Greenwood Leflore Police ... did not mishandle a single arrest case?
COUNSEL: I'll tell you that the plaintiffs didn't prove they did in this instance, but I won't tell you that they didn't in those ten years.

of denial of equal protection on the basis of race. Rucker was attacked in her home by an unknown assailant who, in her opinion, would have raped her had she not managed to frighten him away by screaming. GPD came out to investigate, but the only clue she could give the officers was that the man wore his hair in plaits. GPD did not dust her home for fingerprints, nor did they attempt to track the man with the aid of bloodhounds from the state penitentiary at Parchman, Mississippi.

Rucker believed that GPD would have investigated her case more assiduously had she been white. She alleged that the rape of a white woman was investigated with the use of bloodhounds and fingerprint comparisons, but her attorney conceded that that was merely an allegation. The portion of Rucker's affidavit pertaining to her assertion that crimes against blacks were not investigated as thoroughly as were those against whites was properly ignored by the District Court because it failed to fulfill the requirements of F.R. Civ.P. 56(e).[4]

The District Court reviewed the evidence in the record before it. Judge Keady concluded that there existed no material issue of fact on Rucker's claim of unequal enforcement.

> Della Rucker has not come forward with additional proof of any type to show there was in fact [unequal] ... investigation carried out by the police department when assaults were committed on black women as compared to when assaults were committed on white women. That does not come through to the Court as presenting an issue of fact. The evidence simply has not been produced.

We are mindful that on review of a summary judgment, we are required to "consider the evidence presented in the light most favorable to the party opposing the motion." *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984). Yet, even with the aid of that rule of construction, we are unable to conclude that Rucker's claim presented a material issue of fact.

Stripped of its inadmissible claims, Rucker's affidavit stated only that she had been assaulted and had called the police. In her own deposition, Rucker acknowledged that the reason she believed she had been unfairly treated stemmed from the fact that GPD failed to respond to a letter she sent complaining about the way the Department handled its investigation of the assault she suffered. Finally, her attorney conceded that Rucker's allegations were merely that, allegations. Those allegations, moreover, were supported only minimally by the deposition of the Greenwood police commissioner.[5]

Everything in this record "demonstrates the absence of any genuine issue of material fact." *Simon v. United States*, 711 F.2d 740, 745 (5th Cir.1983). Rucker's bare bones allegations are insufficient to withstand summary judgment because the party opposing summary judgment

> must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.

*Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.*, 695 F.2d 839, 845 (5th Cir.1983). "Allegations that one 'might could' show certain facts at trial are simply insufficient under Rule 56(e)." *Pe-*

---

**4.** At the hearing, the District Court also had before it Rucker's disposition, at which she made the following significant admission:

Q: Why do you say you were neglected because of your race?

A: Because I wrote them. I did not get a response. Nobody acted as if they were interested in what happened to me.

Q: Is that the only reason you say you were neglected because of your race?

A: Yes, sir.

Rucker was referring to the fact that, shortly after she was assaulted, she and two other black women wrote to the Mayor to complain about the manner in which GPD investigated assaults on black women. The letter elicited no response.

**5.** That support was, indeed, minimal because the Commissioner, Edward Ambrose, testified only that he recalled that a white woman had been raped at about that time and that her assailant had been apprehended.

*lotto v. L & N Towing Co.*, 604 F.2d 396, 403 (5th Cir.1979).

### Conclusion

A thorough review of the record convinces us that the plaintiffs' points on appeal are all without merit. The judgment of the Court was correct.

AFFIRMED.